IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLOBALTAP LLC, | Case No. |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| SMART TAP LLC, MEDIA VENTURES GROUP AND WILLIAM M. APFELBAUM, | |
| Defendants. | |

## COMPLAINT

Plaintiff, GLOBALTAP LLC ("GLOBALTAP"), for its Complaint against Defendants Smart Tap, Inc. ("Smart Tap"), Media Ventures Group ("MVG") and William M. Apfelbaum ("Apfelbaum") states as follows:

### SUMMARY OF CLAIMS

1. GLOBALTAP asserts claims for: (1) patent infringement; (2) trade secret misappropriation under the Illinois Uniform Trade Secret Act, 765 ILCS 1065/1 et seq.; (3) breach of contract; (4) fraud; and (5) trade dress infringement.

### THE PARTIES

2. GLOBALTAP is a Michigan Limited Liability Company with its headquarters located at 18075 Mt. Zion Road, Galien, Michigan, 49113. GLOBALTAP's founder and sole member, Daniel Whitman, resides in Galien, Michigan.

3. Smart Tap is a New York Limited Liability Company. It identifies its entity address as Geoffrey Handler, Esq. at McLaughlin & Stern LLP at 260 Madison Ave., New York, New York 10016. Its initial filing date was January 29, 2013, as Max Hydration LLC. On May 10, 2013, it switched its name to Smart Tap.

4. MVG is a Delaware Limited Liability Company based in New York, New York. It filed its entity information with the State of New York on June 8, 2010 in Westchester County. MVG's listed its entity address as 24 Pleasant Ridge Road, Harrison, New York, 10528. Its principal place of business is 60 West 55th Street, 4th Floor, New York, New York, 10019.

5. Apfelbaum is a resident of Connecticut, residing at 143 Byram Shore Road, Greenwich, Connecticut, 06830. He also has a residence at 23600 West Malibu Colony Road, Malibu, California, 90265.

## JURISDICTION AND VENUE

6. Jurisdiction exists under 28 U.S.C. §1331, 1338 and 1367(a). Even without the patent claim, jurisdiction would exist pursuant to 28 U.S.C. §1332, inasmuch as there is complete diversity between the parties and the matter in controversy exceeds $75,000. Venue is appropriate in this district pursuant to 28 U.S.C. §§1391 and 1400(b).

7. GLOBALTAP and MVG entered into a Confidential Disclosure Agreement on November 28, 2012 providing for exclusive jurisdiction in this district. (Exhibit A).

## BACKGROUND

8. GLOBALTAP was founded in 2008 with the goal of providing the public with clean, free, and accessible water by offering an attractive and reliable alternative to bottled water. To that end, GLOBALTAP began development on an original concept for an Outdoor Bottle Filling Station in late 2008. That product concept is the centerpiece of GLOBALTAP's effort to curb bottled water consumption -- and its resulting detrimental environmental impact -- through the installation of reusable water bottle filling fountains in public spaces.

9. In 2008, GLOBALTAP engaged a prominent design firm, IDEO, to develop the Outdoor Bottle Filling Station concept. IDEO subsequently applied its professional design expertise to analyze idea, concept, and user experience for the intended GLOBALTAP product,

and with GLOBALTAP's input and assistance, ultimately prepared numerous design concepts. All of these were shared with MVG and Apfelbaum pursuant to the parties' CDA.

10. In 2009, GLOBALTAP prepared an exhaustively detailed, 101-page business plan ("the 2009 business plan"). That document addressed in detail GLOBALTAP's "Market Opportunity and Business Concept," "Marketing Plan," "Operating Plan," and "Financial Projections." The business plan specifically addressed GLOBALTAP's marketing and communications plan for project concept, scaling, and planning for various public locations; its potential revenue models; and its action plan for the ensuing year. Given the commercially sensitive nature of its contents, GLOBALTAP's business plan was clearly marked "Private and Confidential" and "Confidential and Proprietary."

11. On December 17, 2009, GLOBALTAP accomplished a successful pilot launch of its product in San Francisco. That launch resulted in television coverage, newspaper articles and blogs on "green" websites. The publicity resulted in numerous inquiries to GLOBALTAP from schools, parks and museums in cities around the world.

12. KevJumba, a YouTube sensation with more than 1,300,000 subscribers, posted a video in search of GLOBALTAP fountains posted June 17, 2011 which has generated over 2.5 million views.

13. A KevJumba fan featured GLOBALTAP's fountains (at Yerba Buena Gardens, Marina Green, and the San Francisco Airport) on a YouTube video posted September 2011.

14. In 2012, GLOBALTAP partnered with HBO for the documentary "The Weight of the Nation" series to install tap stations in 20 cities in 100 schools to combat childhood obesity and diabetes.

15. GLOBALTAP Founder and CEO Dan Whitman gave a presentation at TEDxSF: 7 Billion Well which was posted on YouTube in November 2012.

16. GLOBALTAP also partnered with Nike, Hurley, and the Rob Machado Foundation's Hydration Nation. GLOBALTAP was featured in a Twitter Twicsy video posted in December 2012.

17. GLOBALTAP has also launched in Aspen, Washington DC, the San Francisco Airport, the Oracle Open World, the US Open, the Academy of Sciences, and many schools.

### GLOBALTAP Discloses Its Plans To MVG and Apfelbaum Under A Confidential Disclosure Agreement

18. MVG and Apfelbaum's involvement in GLOBALTAP's work first began in the Fall of 2012 when Apfelbaum's assistant Connie Fitzgerald contacted GLOBALTAP after seeing GLOBALTAP's positive press.

19. At that time, MVG, through Apfelbaum, expressed an interest in partnering with GLOBALTAP, and indicated that it would like to pursue the prospect of working together to put up sponsor paid water taps in public locations throughout the United States, and the world. Apfelbuam expressed interest in putting up his own money to fund the joint project, using GLOBALTAP's designs and business plans. Consistent with this stated goal, on November 28, 2012, MVG executed a Confidential Disclosure Agreement ("CDA") with GLOBALTAP. (Exhibit A). The CDA was signed by Apfelbaum.

20. The CDA is quite clear: Section 2.4 prohibits MVG and Apfelbaum from using, for its own commercial purposes, GLOBALTAP's confidential information. (Exhibit A at Section 2.4). Included within the definition of confidential information are GLOBALTAP's "technical and business information…, materials, methods, strategies, prototypes, designs, process feasibility issues, market potential information, consumer and supplier data, regulatory and safety strategies, laboratory methods and assays, project approaches and models, technology issues, and clinical data" in connection with GLOBALTAP's project to install bottle filling stations for the municipal market.

21. When GLOBALTAP and MVG, through Apfelbaum, began their discussions in November 2012, MVG had no similar product in development. Nor did Apfelbaum.

22. GLOBALTAP shared a 25-page Program Summary Discussion Document dated January 30, 2013 with MVG. The document is labeled Private, Confidential and Proprietary as directed by the parties' CDA.

23. After months of negotiations, MVG promised to provide GLOBALTAP with a $200,000 loan to be paid back at 8% interest within 18 months. In return, MVG would get exclusive use of GLOBALTAP's GT2000 designs with GLOBALTAP as MVG's only supplier.

24. GLOBALTAP, through Founder Daniel Whitman, then proceeded to share its technical and business plans, sales and pricing information, and financial projections with MVG during numerous telephone calls and email communications with Apfelbaum and Fitzgerald between November 2012 and April 2013.

### Apfelbaum Implements Scheme To Cut Off GLOBALTAP And Launch His Own Organization Providing Outdoor Bottle Filling Station In Direct Competition With GLOBALTAP

25. At some point, Apfelbaum devised a plan in which he would: (1) contact GLOBALTAP's business relationships using confidential information obtained from GLOBALTAP under the CDA, and (2) launch his "own" version of GLOBALTAP's organization to provide reusable water bottle filling stations in direct competition with GLOBALTAP. Apfelbaum kept that plan secret from GLOBALTAP.

26. Upon information and belief, MVG and Apfelbaum digitally rendered GLOBALTAP's confidential GT2000 designs and shared it, without permission, with a number of cities including New York City, Stamford, Santa Monica, and Boston.

27. Apfelbaum deliberately and secretly developed a business relationship with Parsons Brinckerhoff, a GLOBALTAP contact, despite specific direction by GLOBALTAP not

to do so under the CDA. Parsons Brinckerhoff is party to its own confidential disclosure agreement with GLOBALTAP.

28. Apfelbaum deliberately and secretly contacted cities already working with GLOBALTAP, including New York City, Boston, San Francisco, Santa Monica, and Philadelphia.

29. MVG and Apfelbaum formed Max Hydration in January 2013 based on the information, plans, and strategies disclosed by GLOBALTAP under the CDA. MVG and Apfelbaum formed Max Hydration with the intent to compete directly with GLOBALTAP.

30. In January 2013, Apfelbaum ensures GLOBALTAP that MVG is not working with Elkay and that it has had "ZERO" discussions with Elkay.

31. On April 13, 2013, Apfelbaum told GLOBALTAP that "we've [MVG and Apfelbaum] decided to go in another direction. It just seems that we're too far apart philosophically…we hope to consider using GLOBALTAP as a supplier as we go forward with our project."

32. In May 2013, MVG and Apfelbaum changed the name of Max Hydration to Smart Tap, a name disclosed by GLOBALTAP in its confidential business plans share under the CDA.

33. Smart Tap, through Apfelbaum, is pursuing a sponsorship platform with a rewards platform, another concept taken from GLOBALTAP's confidential business plan shared under the CDA.

34. Smart Tap, through Apfelbaum, is pursuing the same technology platform learned from GLOBALTAP's confidential business plan shared under the CDA.

35. Smart Tap, through Apfelbaum, contacted the corporate sponsors already working with GLOBALTAP, contacts also learned from GLOBALTAP's confidential business plan shared under the CDA.

36. In June 2013, GLOBALTAP learned from its contact in Santa Monica that Apfelbaum sent mock ups of outdoor bottle filling stations using the GT2000 design, via an email dated March 30, 2013, taken from GLOBALTAP's confidential disclosures shared under the CDA.

37. In June 2013, GLOBALTAP learned Apfelbaum violated the CDA by contacting and working with GLOBALTAP clients.

38. In June 2013, GLOBALTAP learned Apfelbaum is engaging in unfair business practices by working with Elkay Manufacturing and Most Dependable Fountains.

39. On July 2, 2013, GLOBALTAP learned from a press release that Smart Tap plans to install six outdoor bottle filling stations in Prospect Park, Brooklyn, New York, using the GT2000 design taken from GLOBALTAP under the CDA. Smart Tap's website at www.smarttap.com indicates it was "born" June 13, 2013 in Prospect Park.

40. In July 2013, GLOBALTAP learned Smart Tap partnered with Elkay Manufacturing ("Elkay") to manufacture its outdoor bottle filling stations – stations that were created from trade secrets stolen from GLOBALTAP's 2009 business plan and that infringe GLOBALTAP's U.S. patent – they are the subject of a pending lawsuit. Indeed, photographs of Smart Tap fountains are identical to the Elkay fountains at issue in GLOBALTAP's lawsuit against Elkay.

## COUNT I
## PATENT INFRINGEMENT

1-40. Plaintiff realleges and incorporates Paragraphs 1 through 40 of this Complaint as Paragraphs 1 through 40 of Count I.

41. GLOBALTAP is the owner of U.S. Design Patent No. D646,348S, issued October 4, 2011 and titled "Water Bottle Fountain With Side Bubbler" (the "'348 Patent").

42. Smart Tap's outdoor water bottle filing stations infringe the '348 patent; specifically, the resemblance between the patented design and the Smart Tap stations is such as to deceive an ordinary observer. GLOBALTAP is entitled to damages as a result of that infringement.

## COUNT II
## TRADE SECRET MISAPPROPRIATION

1-42. Plaintiff realleges and incorporates Paragraphs 1 through 42 of Count I as Paragraphs 1 through 42 of Count II.

43. The confidential information which GLOBALTAP provided MVG and Apfelbaum constituted trade secrets under the Illinois Uniform Trade Secrets Act, 765 ILCS 1065/1, et seq.

44. At all times, GLOBALTAP took reasonable steps to maintain the confidentiality of its trade secrets, and it required MVG to sign the Confidential Disclosure Agreement prior to the disclosure of its trade secrets.

45. MVG and Apfelbaum misappropriated GLOBALTAP's trade secrets by using them in its decision to develop outdoor water bottle filling stations, under Apfelbaum's corporation Smart Tap, which would directly compete with GLOBALTAP's products.

46. MVG and Apfelbaum's misappropriation was willful.

47. GLOBALTAP has been damaged by MVG and Apfelbaum's misappropriation.

## COUNT III
## BREACH OF CONTRACT

### (Confidential Disclosure Agreement)

1-47. Plaintiff realleges and incorporates Paragraphs 1 through 47 of Count II as Paragraphs 1 through 47 of Count III.

48. MVG and Apfelbaum's misuse of GLOBALTAP's confidential information constitutes a breach of the Confidential Disclosure Agreement.

49. GLOBALTAP has been damaged by MVG and Apfelbaum's breach.

## COUNT IV
## FRAUD

1-49. Plaintiff realleges and incorporates Paragraphs 1 through 49 of Count III as Paragraphs 1 through 49 of Count IV.

50. Given the confidential relationship between the parties due to the CDA, MVG and/or Apfelbaum had a duty to disclose the plan to contact GLOBALTAP's partners and tool and launch its "own" organization and product which would directly compete with GLOBALTAP's organization and product.

51. MVG and Apfelbaum deliberately kept that plan secret from GLOBALTAP.

52. GLOBALTAP was damaged by MVG and Apfelbaum's failure to disclose. Had GLOBALTAP been contemporaneously informed of MVG and Apfelbaum's plan, it would not have shared its trade secrets with MVG or Apfelbaum. It also would have had the opportunity to enforce its rights against MVG and Apfelbaum well before nearly being driven from the very market which GLOBALTAP created.

## COUNT V
## TRADE DRESS INFRINGEMENT

1-52. Plaintiff realleges and incorporates Paragraphs 1 through 52 of Count IV as Paragraphs 1-52 of Count V.

53. GLOBALTAP's outdoor bottle filling stations' appearance and configuration are inherently distinctive.

54. GLOBALTAP's outdoor bottle filling stations have acquired secondary meaning in the market.

55. Smart Tap's outdoor bottle filling station creates a "likelihood of confusion" on the part of customers and sponsors as to source.

56. Smart Tap intentionally copied GLOBALTAP's outdoor bottle filling stations' appearance and configuration as well as its business model including particular sponsorship techniques.

57. Smart Tap intentionally copied GLOBALTAP's website design and layout to create confusion as to source and to poach GLOBALTAP's customers and potential customers.

58. Smart Tap intentionally copied GLOBALTAP's marketing pieces to create confusion as to source and to poach GLOBALTAP's customers and potential customers.

59. Smart Tap intentionally copied GLOBALTAP's sponsorship outreach techniques to create confusion as to source and to poach GLOBALTAP's customers and potential customers, including at least contacts in Santa Monica and New York City, and with Parsons Brinckerhoff.

## PRAYER FOR RELIEF

1. For **Count** I, Plaintiff GLOBALTAP respectfully requests that this Court enter judgment against Defendants MVG, Smart Tap and Apfelbaum granting the following relief:

   a. The entry of judgment in favor of GLOBALTAP and against Defendants;

   b. An injunction prohibiting Defendants from continuing its infringement;

   c. An award of damages against Defendants and adequate to compensate GLOBALTAP for the infringement that has occurred, but in no event less than a reasonable royalty as permitted by 35 U.S.C. § 284 and Defendants' profits pursuant to 35 U.S.C. § 289, together with prejudgment interest from the date the infringement began; and

        d.        Such other relief that GLOBALTAP is entitled to under law, and any further relief that this Court or a jury may deem just and proper.

    2.    For **Count II**, Plaintiff GLOBALTAP respectfully requests that this Court enter judgment against Defendants granting the following relief:

        a.        The entry of judgment in favor of GLOBALTAP and against Defendants;

        b.        Compensatory damages, including GLOBALTAP's actual losses and Defendants' unjust enrichment;

        c.        Exemplary damages; and

        d.        Such other relief that GLOBALTAP is entitled to under law, and any further relief that this Court or a jury may deem just and proper.

    3.    For **Count III**, Plaintiff GLOBALTAP respectfully requests that this Court enter judgment against Defendants granting the following relief:

        a.        The entry of judgment in favor of GLOBALTAP and against Defendants;

        b.        Compensatory damages; and

        c.        Such other relief that GLOBALTAP is entitled to under law, and any further relief that this Court or a jury may deem just and proper.

    4.    For **Count IV**, Plaintiff GLOBALTAP respectfully requests that this Court enter judgment against Defendants granting the following relief:

        a.        The entry of judgment in favor of GLOBALTAP and against Defendants;

        b.        Compensatory damages;

        c.        Punitive damages; and

        d.        Such other relief that GLOBALTAP is entitled to under law, and any further relief that this Court or a jury may deem just and proper.

5. For **Count V**, Plaintiff GLOBALTAP respectfully requests that this Court enter judgment against Defendants granting the following relief:

a. The entry of judgment in favor of GLOBALTAP and against Defendants;

b. Compensatory damages;

c. Punitive damages; and

d. Such other relief that GLOBALTAP is entitled to under law, and any further relief that this Court or a jury may deem just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all of its claims.

Respectfully submitted,

*/s/ Paul K. Vickrey*
Paul K. Vickrey
Olivia T. Luk
NIRO, HALLER & NIRO
181 W. Madison, Suite 4600
Chicago, IL 60602
(312) 236-0733
Fax: (312) 236-3137
vickrey@nshn.com
oluk@nshn.com
***Attorneys for Plaintiff, GLOBALTAP LLC***