# EXHIBIT A

Media Ventures Group – GLOBALTAP - Confidential Disclosure Agreement

This agreement ("AGREEMENT") is between Media Ventures Group (hereinafter referred to along with its AFFILIATES and AGENTS as "MVG") and GLOBALTAP LLC. (hereinafter referred to along with its AFFILIATES as "GT"), individually referred to herein as "PARTY" and collectively referred to herein as "PARTIES." The PARTIES wish to explore their mutual interests in GT's project concerning distribution of municipal water, hereinafter referred to as "PURPOSE." In order for the PARTIES to explore their mutual interests, it may be necessary for MVG and GT to disclose to each other technical and business information, which the parties consider confidential. As used herein "INFORMATION" means any and all information disclosed by one party to the other in conjunction with the PURPOSE. Said INFORMATION may include but not be limited to MVG or GT's business plans and interests related to the PURPOSE; information about or samples of MVG or GT's materials; methods; strategies; prototypes; designs; process feasibility issues; market potential information; consumer and supplier data; regulatory and safety strategies; laboratory methods and assays; project approaches and models; technology issues; and clinical data.

1. **Definitions**

   1.1 DISCLOSING PARTY. The party to whom the INFORMATION belongs and by whom the information is being disclosed.

   1.2 RECEIVING PARTY. The party to whom INFORMATION has been disclosed.

2. **Obligation of Confidentiality.** MVG and GT may, at their discretion, disclose INFORMATION to the RECEIVING PARTY. Such disclosures will be made upon the following conditions:

   2.1. INFORMATION disclosed will be received and held in confidence by the RECEIVING PARTY.

   2.2. The RECEIVING PARTY will take such steps as may be reasonably necessary to prevent the disclosure of INFORMATION to others except to its employees who are required to know the INFORMATION in conjunction with the PURPOSE and who are bound to the RECEIVING PARTY by a like obligation of confidentiality.

   2.3. The RECEIVING PARTY will use the same degree of care regarding the DISCLOSING PARTY'S INFORMATION as it uses in protecting and preserving its own confidential information of like kind to avoid disclosure or dissemination thereof, but in no event less than a reasonable degree of care.

   2.4. The RECEIVING PARTY will not utilize the INFORMATION beyond the PURPOSE without first having obtained the written consent of the DISCLOSING PARTY.

3. **Exceptions to Obligation of Confidentiality.** The commitments set forth in Section 1 above (entitled "Obligation of Confidentiality") and all subsections thereof, will not extend to any portion of INFORMATION, which:

3.1. is already in the RECEIVING PARTY's lawful possession at the time of disclosure by the DISCLOSING PARTY, as established by relevant documentary evidence; or

3.2. is or later becomes, through no act on the part of the RECEIVING PARTY, generally available to the public; or

3.3. corresponds in substance to that furnished to the RECEIVING PARTY by any third party having no obligation of confidentiality, direct or indirect, to the DISCLOSING PARTY; or

3.4. corresponds to that furnished by the DISCLOSING PARTY to any third party on a non-confidential basis; or

3.5. is required to be disclosed by law or government regulation, provided that the RECEIVING PARTY provides reasonable prior notice of such required disclosure to the DISCLOSING PARTY.

4. **SUB-CONTRACTORS**. Should the RECEIVING PARTY determine that third parties to this AGREEMENT ("SUB-CONTRACTORS") will be required to fulfill any requirements under the PURPOSE of this AGREEMENT, and such SUB-CONTRACTOR may require access to INFORMATION, then:

4.1. RECEIVING PARTY must receive the express, written permission of the DISCLOSING PARTY to disclose such INFORMATION to the SUB-CONTRACTOR, such consent not to be unreasonably withheld; and

4.2. RECEIVING PARTY will establish a confidentiality agreement with such SUB-CONTRACTOR that is at least as restrictive as the confidentiality requirements of this AGREEMENT; and

4.3. Such confidentiality agreement will explicitly name the DISCLOSING PARTY as an intended third-party beneficiary with all legal rights associated thereto to enforce such confidentiality agreement.

5. **Term of AGREEMENT and Termination of Obligation of Confidentiality.** This AGREEMENT will become effective and binding upon execution by AU of this AGREEMENT, and will terminate two (2) years from such effective date. Notwithstanding such termination, the commitments set forth in Section 2 (entitled "Obligation of Confidentiality") and all subsections thereof will survive for a period of three (3) years from the termination date of this AGREEMENT and any extensions hereof. Following termination of the commitments set forth in Section 1 (entitled "Obligation of Confidentiality") and all subsections thereof, with respect to the whole of the INFORMATION or upon termination thereof in connection with specific portions of the INFORMATION by operation of any of the items in Section 2 (entitled "Exceptions to Obligation of Confidentiality") and all subsections thereof, the RECEIVING PARTY will be completely free of any express or implied obligations restricting disclosure and use of INFORMATION, subject to the patent rights of the DISCLOSING PARTY.

6. **No Rights or Obligations by Implication.** Acceptance of this AGREEMENT will not carry with it any express or implied license under any intellectual property rights of the other PARTY, nor does it obligate either PARTY to negotiate a cooperative arrangement of any

kind with the other PARTY. Nothing contained herein will obligate either PARTY to purchase or supply equipment, materials, or services from or to the other.

7. **AFFILIATES.** As used herein, the term "AFFILIATES" refers to any corporation, association, or other entity that directly or indirectly owns, is owned by, or is under common ownership with GLOBALTAP or with MVG respectively, either currently or during the term of this AGREEMENT. As used in this definition, the terms "owns", "owned", or "ownership" mean the direct or indirect possession of more than fifty percent (50%) of the voting securities, income interest, or a comparable equity in such business entity.

8. **AGENTS**. As used herein, the term "AGENTS" refers to employees of the following companies that are performing work for or on behalf of MVG: The AGENTS are authorized on behalf of MVG to disclose MVG INFORMATION, and represent MVG in any discussions pursuant hereto. Notwithstanding the foregoing, the AGENTS are not authorized to bind MVG to any contractual or monetary obligations.

9. **Notices.** All notices, authorizations, etc., relevant to this AGREEMENT will be personally served or sent by first class mail, postage pre-paid, or email, to the respective PARTIES at the following addresses:

| | |
|---|---|
| Media Ventures Group | Connie Fitzgerald<br>60 W 50th St<br>New York, NY 10019 |
| GLOBALTAP LLC: | Daniel H. Whitman<br>Global Tap LLC<br>1006 W. Fry Street<br>Chicago, IL. 60622 |

10. **Governing Law.** This AGREEMENT will be governed and construed in accordance with the laws of the State of Illinois, United States of America.

11. **Jurisdiction.** Any dispute related to this Agreement or the performance thereof shall be exclusively litigated in the Circuit Court of Cook County, Illinois or the United States District Court for the Northern District of Illinois.

12. **Headings.** The headings or titles of sections or paragraphs appearing in this AGREEMENT are provided for convenience and are not to be used in construing this AGREEMENT.

The PARTIES by their duly authorized representatives, hereby execute this AGREEMENT in duplicate; with each PARTY receiving one (1) of the executed originals (by fax, mail, or email) hereof.

ACCEPTED:

GLOBALTAP LLC.

By: ______________________

______________________

Date: November 28, 2012

ACCEPTED:

Media Ventures Group

By: William Apfelbaum Chairman

______________________

Date: 11/29/12